**BURLINGTON INDUSTRIES, INC.**

**v.**

**EXXON CORPORATION.**

Civ. A. No. 72–1014–M.

United States District Court,
D. Maryland.

July 1, 1974.

Thomas Waxter, Jr., Stephen D. Langhoff, and Semmes, Bowen & Semmes, Baltimore, Md., Wallace D. Newcomb, James C. McConnon, Frank J. Benasutti, and Paul & Paul, Ralph W. Brenner and Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for plaintiff.

John W. Avirett, 2d, Baltimore, Md., and Karl W. Flocks and Sheridan Neimark, Washington, D. C., for defendant.

## MEMORANDUM

JAMES R. MILLER, Jr., District Judge.

Plaintiff has moved, pursuant to Federal Rule of Civil Procedure 21 to add Amtech Corporation, a Delaware corporation having a place of business at Odenton, Maryland, as a defendant in the present action.

According to the plaintiff, this suit was initially instituted when it had no knowledge of Amtech Corporation or of its acts of alleged infringement of plaintiff's patent. Plaintiff claims that only during the deposition of Sidney Levin, Vice President of Amtech, did the facts upon which plaintiff now depends become clear. Plaintiff's memorandum on its motion summarizes its contentions as follows:

"Specifically, Mr. Levin stated that defendant Exxon Corporation's predecessor, Enjay Corporation, had acquired and developed an extruder in 1969, specifically for the manufacture of carpet backing yarns (page 98, Levin deposition). Defendant Enjay operated this equipment at its Odenton, Maryland facility until December,

1971. This facility, with the exception of the ribbon or fabric extruder line, was sold to Amtech (Levin deposition, page 63). From December, 1971 to February, 1973, defendant (now Exxon) retained ownership of the ribbon fabric extruder line in Amtech's Odenton, Maryland facility and operated the line to produce ribbon fabric for carpet backing. In February, 1973 Amtech acquired title to the Exxon ribbon fabric extruder equipment located in Amtech's plant in Odenton, Maryland (Levin deposition, pp. 64, 65, 89). Since February, 1973 Amtech has manufactured, at its Odenton, Maryland facility, ribbon yarns from this line specifically for carpet backing under contract to defendant Exxon (Levin deposition, pp. 65, 118, 119).

"After the sale of the ribbon fabric extruding equipment by Exxon to Amtech, Exxon supplied substantial amounts of technical assistance and know-how to enable Amtech to successfully operate the ribbon fabric extrusion equipment. Amtech, through the person of its employee Sidney Levin, knows, and knew when it acquired the ribbon fabric extruder equipment from Exxon, that the ribbon fabric it was producing was to be utilized in carpet backing. Furthermore, Amtech was fully aware of the plaintiff's patent. (Levin deposition, pp. 155, 156, 185).

"Accordingly, the conduct of Amtech Corporation since February, 1973 clearly has been conduct of the type proscribed by 35 USC 271."[1]

■ Defendant has objected to the addition of Amtech as a party defendant on the ground that venue is improper.

Since Amtech is a Delaware corporation, venue over Amtech in this case alleging patent infringement is proper only if Amtech is shown *both* to have committed acts of infringement in Maryland *and* to have a regular and established place of business in Maryland. 28 U.S. C. § 1400(b). Schnell v. Peter Eckrich & Sons, 365 U.S. 260, 81 S.Ct. 557, 5 L. Ed.2d 546 (1961); American Cyanamid Co. v. Nopco Chemical Co., 388 F.2d 818 (4th Cir. 1968).

Both sides agree that Amtech meets the test of having a regular and established place of business in Maryland. Exxon contends, however, that Amtech has not committed any acts of infringement in Maryland.

■ Contrary to Exxon's assertion, direct acts of infringement are not necessary to establish proper venue under § 1400(b). Acts constituting contributory infringement under 35 U.S.C. § 271(c) or an inducement of infringement under 35 U.S.C. § 271(b) are sufficient to satisfy the venue requirements of § 1400(b). *See e. g.,* Gunter & Cooke Inc. v. Southern Electric Service Co., 256 F.Supp. 639 (M.D. N.C.1966), aff'd, 378 F.2d 60 (4th Cir. 1967); Leesona Corp. v. Cotwool Mfg. Corp., 201 F.Supp. 472 (W.D.S.C.1962); Dover Corp. v. Fisher Governor Co., 221 F.Supp. 716 (S.D.Tex.1963); Watsco v. Henry Valve Co., 232 F.Supp. 38 (S.D. N.Y.1964); 69 C.J.S. Patents § 316 at page 928.

The acts of Amtech which are alleged by plaintiff to constitute acts of infringement are probably not direct acts of infringement under 35 U.S.C. § 271(a). While the patent in suit relates to woven fabric material, it is alleged

---

1. 35 U.S.C. § 271 provides, in part:
   (a) Whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent.
   (b) Whoever actively induces infringement of a patent shall be liable as an infringer.
   (c) Whoever sells a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use, shall be liable as a contributory infringer.

that Amtech produces only yarn and not fabric.

█ Under 35 U.S.C. § 271(b), to "actively induce" infringement means, in essence, to aid and abet such infringement by another. *See* Marston v. Gant, 351 F.Supp. 1122 (E.D.Va.1972); Engineered Sports Products v. Brunswick Corp., 362 F.Supp. 722 (D.Utah 1973); Deller's Walker on Patents (2d ed. 1972), Vol. 7, § 514; 69 C.J.S. Patents § 305. With the exception of the acts singled out by § 271(c) and therein designated as acts of "contributory infringement", § 271(b) was intended to umbrella all acts which under case law prior to the enactment of the 1952 Patent Act, c. 950, 66 Stat. 792, were collectively referred to as "contributory infringement". Deller, *supra,* at § 514, page 178; Engineered Sports, *supra,* 362 F.Supp. at 727; Jones v. Radio Corporation of America, 131 F.Supp. 82, 83–84 (S.D.N.Y.1955). "Inducement", then, under § 271(b), while requiring active or affirmative steps to be taken with the knowledge of the likely infringing result, otherwise is as broad in scope as the range of actions by which one may cause, urge, encourage or aid another to infringe. Fromberg, Inc. v. Thornhill, 315 F.2d 407 (5th Cir. 1963); Aluminum Extrusion Co. v. Soule Steel Co., 260 F.Supp. 221 (C.D.Cal.1966). *Cf.* Marston v. Gant, *supra,* 351 F.Supp. at 1125.

In Spee-Flo Mfg. Co. v. Gray Co., 255 F.Supp. 618 (S.D.Tex.1964), the court ruled that the manufacture and sale by defendant of spray gun tips alone did not constitute infringement of a patent for an airless spray gun, but did constitute inducement to infringe and contributory infringement in view of advertising and sales which indicated that defendant's tips would be used either with its own spray guns or those of another manufacturer.

Here, plaintiff is alleging that Amtech aided Exxon in its infringement of the fabric patent by manufacturing the flat yarn needed to produce the fabric and by furnishing it to Exxon, knowing of the fabric patent and Exxon's infringement thereof.

█ Although both § 271(b) and (c) include what would have been called acts of "contributory infringement" prior to 1952 as previously noted, § 271(c) refers to a specific category of acts of "contributory infringement". Exxon claims for two reasons that § 271(c) does not contemplate the acts alleged to have been committed by Amtech. First, it says that Amtech never *sold* yarn to Exxon but instead processed the raw material provided by Exxon into yarn for Exxon, thus providing and being paid for "rendering a service" as opposed to the "sale" of a product. Second, Exxon argues that the yarn produced by Amtech is "a staple article or commodity of commerce suitable for noninfringing use."

As to the first point, the statute clearly does say "sell". No cases have been found or cited specifically dealing with non-sale situations. Many of the cases speak loosely of "supplying" or "providing" the component part when the facts show the situation to be one of sale. 69 C.J.S. Patents § 307 states the rule prior to the enactment of § 271(c) thusly:

> "As a general rule, a person may be guilty of contributory infringement when, without authority from the patentee, he *manufactures, sells,* or *furnishes* one or more parts or elements of a patented combination with the intent and for the purpose of bringing about the use thereof in such combination after another person, such as the purchaser or user, has supplied the other parts or elements, if any, and assembled all the parts into the complete combination. So, also, the sale of ingredients of a patented composition with the expectation and intent that they be used in making it, may constitute contributory infringement."

The Fourth Circuit held in Freedman v. Friedman, 242 F.2d 364, 367 (4th Cir. 1957), that there was no indication the general rule thus stated had been in-

*f*

tended to be changed by Congress in enacting § 271(c). Although one major holding of *Freedman* was later held to be in error by the United States Supreme Court in Aro Mfg. Co. v. Convertible Top Co., 377 U.S. 476 at 488, 84 S.Ct. 1526, 12 L.Ed.2d 657 (1964),[2] the Supreme Court unequivocally held that § 271(c) was intended to codify contributory infringement case law. 377 U.S. at 485–487, 84 S.Ct. 1526.

Although *Aro Mfg. Co.* dealt with a defendant seller, the Court did say:

> "We think Aro was indeed liable under this provision. Such a result would plainly have obtained under the contributory-infringement case law that § 271(c) was intended to codify. Indeed, most of the law was established in cases where, as here, suit was brought to hold liable for contributory-infringement a *supplier* of replacement parts specially designed for use in the repair of infringing articles." (Emphasis supplied and footnote omitted) 377 U.S. at 485–486, 84 S.Ct. at 1531.

■ In principle, one, who obtains raw material and processes it or refines it in such a way as to change it significantly in order that the processed or refined material can better perform a function, has "sold" the service of improving the raw material if he obtains money or other remuneration for the end result of his labor. If he has obtained the raw material himself, the price includes the cost of the raw material, in which event he is "selling" the raw material and also "selling" the service of improving the raw material. If, as here, the raw material was furnished by the ultimate vendee, the price does not include the cost of the raw material and the "sale" is not of the raw material

but only of the service of improving the raw material. No logical reason has been assigned as to why the generic term "sale" would not apply to the facts alleged here in view of the purpose of the statute to codify prior case law and to make "suppliers" liable as infringers if they acted with knowledge in supplying a product especially designed to be incorporated into an infringing product.

■■ As to whether or not the yarn in question here is a "staple product" this court cannot at this time make a final judgment in the absence of a full factual development. If it is, then Amtech, after the trial on the merits, will not be found liable under § 271(c). At this stage, however, the allegation of the plaintiff that the product is "especially made or especially adapted for use in an infringement of" the patent is sufficient, in conjunction with its other allegations, to establish acts of infringement in Maryland necessary to satisfy the venue requirement of § 1400(b). *See* Gunter & Cooke, Inc. v. Southern Electric Service Co., *supra,* 256 F.Supp. at 648; Fastener Corp. v. Spotnails, Inc., 291 F.Supp. 974 (N.D.Ill.1968); Vibber v. United States Rubber Company, 255 F.Supp. 47 (S.D.N.Y.1966); Deller's Walker on Patents, *supra,* Vol. 7, § 474 at page 56.

Since the plaintiff's allegations, if true in fact and conclusion, establish Amtech as an infringer under § 271(b) or § 271(c), venue will be in Maryland under § 1400(b). No reason appears, therefore, why plaintiff's motion to add Amtech as a party defendant should not be granted.

An order has heretofore been entered for the reasons set forth herein granting the plaintiff's motion to add Amtech as a party defendant.

---

2. In *Freedman,* the Fourth Circuit held that knowledge by a contributory infringer of the existence of the patent and that his acts are contributing to the infringement thereof is not necessary for liability under § 271(c). In *Aro Mfg. Co.*, the Supreme Court, pointing to the words in the statute, "knowing the same to be especially made or especially adapted for use in an infringement of such patent," declared such knowledge to be required in order to constitute one a contributory infringer. 377 U.S. at 488, 84 S.Ct. at 1533.