**WARNER–LAMBERT COMPANY,**
**Plaintiff,**

v.

**C.B. FLEET COMPANY, INC.,**
**Defendant.**

**Civ. A. No. 83–4536.**

United States District Court,
D. New Jersey.

April 5, 1984.

Shanley & Fisher by Frank L. Bate, Newark, N.J., and Pennie & Edmonds by Gerald J. Flintoft, New York City, for plaintiff.

Clapp & Eisenberg by William · J. O'Shaughnessy, Newark, N.J., and Cooper, Dunham, Clark, Griffin & Moran by Jules P. Kirsch, New York City, for defendant.

DEBEVOISE, District Judge.

## I. PRELIMINARY STATEMENT

Plaintiff, Warner-Lambert Company ("Warner"), instituted this suit against defendant, C.B. Fleet Company, Inc. ("Fleet"), alleging in Count I of the complaint that Fleet infringed Warner's Patent No. 4,175,923 entitled "Method and Apparatus for Occult Blood Testing in the Home". Counts II and III of the complaint contained further allegations of tortious interference with Warner's reasonable expectation of economic advantage and wrongful disturbance and harm to Warner's property rights in the field of in-home occult blood testing devices. Presently before the court is Fleet's motion to dismiss the first count of the complaint for improper venue pursuant to Fed.R.Civ.P. 12(b)(3) or, in the alternative, to transfer the case.

## II. VENUE IN THE DISTRICT OF NEW JERSEY

■ While jurisdiction for Counts II and III of the complaint charging state law causes of action is based upon diversity of citizenship under 28 U.S.C. § 1332(a), jurisdiction over Count I of the complaint charging patent infringement is based upon 28 U.S.C. § 1338(a). Venue for the first count is laid in this district pursuant to 28 U.S.C. § 1400(b). Section 1400(b) is the exclusive venue statute for patent infringement actions. *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 229, 77 S.Ct. 787, 792, 1 L.Ed.2d 786 (1957); *Ackerman v. Hook*, 183 F.2d 11, 14 (3d Cir.1950); *Morse v. Master Specialties Co.*, 239 F.Supp. 641, 642 (D.N.J.1964). This statutory provision states that:

> Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

The venue requirements of section 1400(b) are stated in the disjunctive such that either residence or acts of infringement and a regular place of business in the judicial district will suffice to establish venue. If residence cannot be shown, the plaintiff bears the burden of proving both acts of infringement and a regular place of business in order to establish proper venue. *L.D. Schreiber Cheese v. Clearfield Cheese*, 495 F.Supp. 313, 317 (W.D.Pa. 1980).

### 1. Residence

■ For purposes of the patent venue statute, a corporation "resides" only in the state where it is incorporated. *Brunette Machine Works, Ltd. v. Kockum Industries, Inc.*, 406 U.S. 706, 707, 92 S.Ct. 1936, 1937, 32 L.Ed.2d 428 (1972). Fleet is a Virginia corporation with its principal place of business in Lynchburg, Virginia. Consequently, Fleet resides only in Virginia within the meaning of section 1400(b). *See Dicar, Inc. v. L.E. Sauer Mach. Co., Inc.*, 530 F.Supp. 1083, 1088 (D.N.J.1982) (under § 1400(b) New Jersey corporation with its only place of business in New Jersey could not be sued anywhere except New Jersey). Therefore, Warner must establish that

Fleet "has committed acts of infringement and has a regular and established place of business" in the District of New Jersey in order for venue to be proper for the patent infringement claim.

## 2. Acts of Infringement

■ In its brief, Fleet does not dispute that it has committed acts of infringement sufficient to establish venue for the purposes of section 1400(b). Indeed, Fleet's counsel at the December 19, 1983 evidentiary hearing on Warner's application for a preliminary injunction stipulated that at the time this action was commenced Fleet was selling and advertising the accused product within the District of New Jersey. Such activity meets the test of 35 U.S.C. § 271(a) which defines acts of patent infringement in terms of "whoever without authority makes, uses, or sells any patented invention."

Some cases have held that maintenance of a sales representative who solicits sales but does not consummate them within a particular district does not constitute an act of infringement in that district. *See, e.g., Self v. Fisher Controls Co.,* 566 F.2d 62 (9th Cir.1977) (per curiam); *In re Amoxicillin Patent and Antitrust Litigation,* 220 USPQ 379 (D.D.C.1982). I am not persuaded that these cases reflect sound judicial authority since the language of 35 U.S.C. § 271(b) further defines an infringer as "whoever actively induces infringement of a patent." I conclude that solicitation of orders for an infringing product within a district meets the test for inducement of infringement and constitutes an act of infringement for purposes of the patent venue statute. *Burlington Industries, Inc. v. Exxon Corporation,* 379 F.Supp. 754, 756 (D.Md.1974) (direct acts of infringement are not necessary to establish proper venue under § 1400(b)). Therefore, Fleet has engaged in activity in this district by virtue of its selling, advertising, and soliciting orders which arguably infringes Warner's patent.

## 3. Regular and Established Place of Business

■ To meet the venue standards of section 1400(b) Warner must establish not only that Fleet committed acts of infringement but also that Fleet maintains a "regular and established place of business" within this judicial district. The following facts are pertinent in determining whether venue is proper under the second prong of section 1400(b).

Fleet maintains its only manufacturing facility and corporate headquarters in Lynchburg, Virginia. Sales of the Fleet Detecatest product, which is alleged to infringe the '923 patent at issue in this suit, are currently solicited in New Jersey by four sales representatives, three of whom reside in New Jersey. These sales representatives have been employed exclusively by Fleet since 1979 and one of them serves as Fleet's registered agent for service of process in New Jersey. All of the sales representatives work out of their own homes, where they regularly receive and make business telephone calls on Fleet's behalf. The sales representatives also use their homes to store product samples and demonstration equipment, as well as the forms and records which Fleet requires the sales representatives to maintain. Most of the sales representatives took an income tax deduction for each year they were employed by Fleet for the regular use of their residences for Fleet business purposes. The Fleet name is not displayed outside any of the New Jersey residences. The business cards supplied by Fleet to the New Jersey sales representatives, however, reflect the addresses and telephone numbers of the representatives' homes underneath the Fleet logo.

The business activities of the sales representatives are supervised by Fleet through weekly activity reports submitted by the sales representatives. In these reports, the representatives set forth their activities for the company during the week. Fleet's Division Manager for its "Mid-Atlantic Division", which encompasses New Jersey, periodically meets with and conducts training sessions in New Jersey for the sales representatives located here. Further informa-

tion on sales strategy and planning is communicated to the sales representatives via memoranda prepared by Fleet.

In addition to the four individual sales representatives, Fleet employs Rodway Sales Corporation, a New Jersey corporation located in Bloomfield, New Jersey. Rodway acts as a broker for approximately thirty different manufacturers, including Fleet, soliciting sales of products, including the accused product, to food stores.

The sales representatives are not authorized to transact business on behalf of Fleet in this district. Thus, while their job is to solicit orders, the sales representatives are not authorized to consummate sales on Fleet's behalf in New Jersey. Rather, orders from New Jersey customers for the Fleet Detecatest product must be submitted to Fleet's office in Lynchburg, Virginia either by the sales representative or directly by the customer. All such orders must be accepted by Fleet in Lynchburg. Following acceptance at Lynchburg, orders are entered into the billing system at Lynchburg, and shipping documents and an invoice are generated. All documentation for each order is maintained in Lynchburg and no copies of the shipping documents are sent to sales persons.

Fleet's finished products are shipped from Lynchburg either directly to customers throughout the United States or to public warehouses leased by Fleet for shipment to customers at a later date. At no time since Fleet's initial manufacture of its Detecatest product in July 1983 has Fleet leased any public warehouse space in the State of New Jersey, nor has Fleet ever occupied, leased, owned or controlled any office space in the State of New Jersey. Thus, shipments for orders accepted by Fleet from New Jersey customers are made from Fleet's Lynchburg facility directly to the customer's location in New Jersey.

The only property leased on a long-term basis by Fleet in New Jersey consists of automobiles used by the sales representatives in conducting Fleet business.

Fleet contends that these facts are insufficient to base venue in this judicial district under the patent venue statute. A general statement of a test which provides guidance to courts in determining whether a particular defendant has a regular and established place of business within the meaning of section 1400(b) was set forth in *Mastantuono v. Jacobsen Manufacturing Co.*, 184 F.Supp. 178, 180 (S.D.N.Y.1960). There, the court held that a defendant must be "regularly engaged in carrying on a substantial part of its ordinary business on a permanent basis in a physical location within the district over which it exercises some measure of control." The defendant corporation in *Mastantuono* had exhibited its allegedly infringing product at a show in the district, employed salesmen within the district, listed advertisements in telephone books within the district, and designated a particular office located in the district as its registered agent. The court viewed these connections with the district as insufficient to establish a "regular and established place of business" since the defendant did not own, lease, or control any fixed physical location within the district and sales were consummated only upon defendant's acceptance at its principal place of business of orders placed with defendant's salesmen.

*Mastantuono* has generated a line of cases which strictly construe the statutory language of section 1400(b) to require that a nonresident defendant have a permanent establishment under its control from which it regularly conducts business. In *Dual Manufacturing and Engineering Company v. Burris Industries*, 531 F.2d 1382, 1388 (7th Cir.1976), the court found that defendant had a regular and established place of business within the district where the defendant leased premises for a permanent showroom and sales office used by its exclusive sales representatives. The fact that defendant rented space within the district to accommodate ten full-time salespeople who could accept orders on defendant's behalf was also stressed by the court in *Clopay Corp. v. Newell Companies, Inc.*, 527 F.Supp. 733, 740 (D.Del.1981) as

grounds for its finding that the defendant had a regular and established place of business.

Where a defendant corporation merely employs sales representatives within a district without owning, leasing or controlling any real property located in the district, courts have declined to find a regular and established place of business. In *Ashland Oil, Inc. v. Acme Resin Corp.*, 472 F.Supp. 1132 (E.D.Wis.1979), the defendant employed a single sales representative in the district but did not own or rent any office space there. The sales representative who worked out of his own home was not authorized to consummate sales in the district. Rather, orders from customers were forwarded to defendant's headquarters for acceptance. Based on these facts, the court held that the defendant did not maintain a regular and established place of business in the district.

Similarly, in *Mida Manufacturing Co. v. Femic, Inc.*, 539 F.Supp. 159, 161 (E.D.Pa. 1982), the court held that the presence of defendant's independent sales representative and the defendant's solicitation of business within the district did not give rise to venue under section 1400(b) where the defendant did not own or rent any property in the district. Likewise, the court in *IPCO Hospital Supply v. Les Fils D'Auguste, etc.*, 446 F.Supp. 206, 208 (S.D.N.Y.1978), treated the fact that the defendant did not own or control any physical location within the district as dispositive of the venue question, resulting in a transfer of the case.

Courts have refused to treat the residences of exclusive sales representatives located in a particular district as physical locations under the control of the defendant within the meaning of the patent venue statute. Thus, in *American Cyanamid v. NOPCO Chemical Co.*, 388 F.2d 818 (4th Cir.), *cert. denied*, 392 U.S. 906, 88 S.Ct. 2057, 20 L.Ed.2d 1364 (1968), the court held that the maintenance by defendant's regional sales manager of an office in his home where he kept brochures on defendant's products and communications from defendant as well as copies of orders and invoices did not create a regular and established place of business within the judicial district where the home was located. The court pointed out that no sign on the home indicated that defendant's business was conducted there and that defendant did not contribute to the maintenance of the home. Unlike the case at bar, the sales manager's business card gave no local address or phone number.

*University of Illinois Foundation v. Channel Master Corp.*, 382 F.2d 514 (7th Cir.1967), also involved a defendant whose interests in a particular district were represented by one sales representative who operated out of his home. The court noted that the sales agent

regularly prepares reports at his home and transmits them to his employer's home office. He receives and initiates telephone calls at his home, the address and telephone number of which are listed on his employer's business card, and Channel Master reimburses him for car expenses, postage and telephone calls. He deducts on his income tax return a percentage of his own household expenses as business usage.

The sales agent was only authorized to solicit orders which were then accepted at defendant's office outside the district. The court held that the sales agent's home could not be characterized as defendant's regular and established place of business within the district and consequently dismissed the case for improper venue.

Examination of the facts and results reached in the cases noted above discloses that two factors play a significant role in determining whether a defendant maintains a regular and established place of business in a particular district for purposes of the patent venue statute. First and most importantly, courts look to whether the defendant maintains, controls and pays for a permanent physical location from which sales are made within the district. *See Mastantuono, supra; Dual Manufacturing and Engineering Company, supra; Clopay Corp., supra; Ashland Oil, Inc.,*

*supra; Mida Manufacturing Co., supra; American Cyanamid, supra; IPCO Hospital Supply, supra; University of Illinois Foundation, supra.* See also *Noble Linear Irrigation, Inc. v. Valmont Industries, Inc.,* 217 USPQ 1107 (D. ID 1982) (defendant conducts regular and established place of business where it leases warehouse for storage of substantial inventory and employs two exclusive sales representatives). Secondly, when a defendant owns or leases property in the district and employs sales representatives, courts look to whether these employees work exclusively for the defendant and whether they are authorized to consummate sales as opposed merely to solicit orders within the district. *Ashland Oil, Inc., supra; University of Illinois Foundation, supra; Clopay Corp., supra; W.S. Tyler Co. v. Ludlow-Saylor Wire Co.,* 236 U.S. 723, 725, 35 S.Ct. 458, 459, 59 L.Ed. 808 (1915) (presence of single sales representative who worked for two companies and was not authorized to execute orders did not constitute regular and established place of business within the district); *Knapp-Monarch Co. v. Dominion Electric Corp.,* 365 F.2d 175 (7th Cir.1966) (defendant which shared services of sales representative with other companies and participated in semiannual furniture shows in district had no regular and established place of business in district); *Magnavox Co. v. APF Electronics, Inc.,* 202 USPQ 614 (N.D.Ill.1978) (defendant which employed non-exclusive sales representative in district did not meet requirements of patent venue statute).

Neither of the factors relied on by other courts is present here. Fleet does not rent, own, or lease any real property to store an inventory of its products or to conduct business in the District of New Jersey. Furthermore, Fleet does not contribute to the maintenance of the homes of its three sales representatives who reside in New Jersey. In addition, Fleet's exclusive sales representatives are authorized merely to solicit orders which are then accepted and filled by Fleet at its Lynchburg, Virginia office. Thus, consideration of these limited factors suggests the conclusion that venue in this district is improper.

Warner urges this court to consider a wider spectrum of factors surrounding Fleet's activities in New Jersey in determining whether the test of "a regular and established place of business" has been met. Indeed, several courts have departed from the rigid requirement set forth in *Mastantuono* of a fixed physical location to find that venue is proper in a district where the defendant merely employs sales representatives. In *CPG Products Corp. v. Mego Corp.,* 214 USPQ 129 (S.D.Ohio 1980), the court found that venue was properly laid within the district where the defendant employed an exclusive sales representative who used his home as a base for soliciting orders and for storing both product samples and sales records. The defendant did not lease or own any real property in the district but reimbursed the sales representative for all his business expenses. Both the representative's business cards and stationery carried the defendant's logo along with his home address and telephone number. The court particularly noted that the sales representative was employed on a permanent basis and generated over one million dollars in sales orders for the defendant, concluding that merely because "the agent does not perform these activities from one set physical location such as a storefront or a rented office space should not control the question of whether his employer has established a regular place of business there." *Id.* at 132.

The court in *Instrumentation Specialties Co. v. Waters Associates, Inc.,* 196 USPQ 684 (N.D.Ill.1977) reached the same conclusion where a defendant employed five exclusive sales representatives who worked out of their homes and generated thousands of dollars of sales annually. The defendant also maintained a fleet of leased cars for the use of the sales representatives and provided them with a substantial amount of demonstration equipment, replacement parts and service material within the district. The court held that "a defendant engaged in such substantial

activities cannot avoid venue simply by not renting or owning a formal office and having all its employees coordinate their activities by phone or personal meetings." *Id.* at 689. *See also Shelter-Lite, Inc. v. Reeves Brothers, Inc.*, 356 F.Supp. 189, 195 (N.D.Ohio 1973) (a regular and established place of business can arise within a district without the maintenance by defendant of a formal office).

Determination of whether section 1400(b) should be read restrictively or broadly turns on an interpretation of legislative intent. Some commentators argue from the sparse legislative history for the proposition that section 1400(b) was not intended to restrict venue in patent suits. *See, e.g.,* 15 Wright & Miller, *Fed.Prac. & Proc.* § 3823 at 136–37; R. Wydick, "Venue in Actions for Patent Infringement", 25 *Stan. L.Rev.* 551, 555 (1973). Support for this position is found in the fact that at the time the patent venue statute was passed in 1897 general venue in federal question cases was proper only where the defendant was an inhabitant. *Brunette Machine Works v. Kockum Industries*, 406 U.S. 706, 712 n. 13, 92 S.Ct. 1936, 1940 n. 13, 32 L.Ed.2d 428 (1972). Thus, by contrast to the venue requirements in federal question cases, the special patent venue statute broadened the venue alternatives for patent claimants by also authorizing venue in any district where the defendant maintained a regular place of business and committed acts of infringement.

This interpretation, however, fails to take into account the background which prompted Congress to adopt the patent venue statute. Prior to the enactment in 1897 of the predecessor statute to section 1400(b) [1] the courts were split on whether a patent infringement suit could be brought wherever the defendant was found, as in diversity cases, or whether such a suit had to be brought where the defendant was an inhabitant, as in federal question cases. Apparently, Congress adopted a patent venue statute in which the venue requirements were more restrictive than in diversity suits but less restrictive than in federal question cases. While commentators who argue for a broad reading of section 1400(b) point to the more limited venue available in federal question cases, this is not necessarily the correct basis for comparison. Indeed, the weight of authority prior to 1897 was that the defendant in a patent suit could be sued wherever found, indicating that the purpose of section 1400(b) was to restrict venue in such cases. *Stonite Co. v. Melvin Lloyd Co.*, 315 U.S. 561, 565–66, 62 S.Ct. 780, 782–83, 86 L.Ed. 1026 (1941).

Additional support for a restrictive interpretation of section 1400(b) may be gleaned by examining the policies furthered by a narrow patent venue statute. Although Fleet argues that patent infringement actions are more conveniently tried where the alleged acts of infringement occurred and the defendant has a regular and established place of business due to the complex technical nature of the subject matter, this argument "makes no sense". Wydick, *supra*, 25 *Stan.L.Rev.* at 565. Since the issues of patent validity and scope are present in most patent infringement suits requiring evidence and witnesses which emanate from the patent holder, the patent venue statute cannot be intended to assure the most practical and convenient forum. *Id.*

A more plausible interpretation of the policy embodied by section 1400(b) is that Congress intended to prevent the use of the patent laws for oppressive economic purposes. Given the nature of the property right protected by the patent laws, a monopoly is created within the boundaries defined by the patent claims. Ease in bringing patent infringement suits wherever an alleged infringer can be found would encourage aggressive patent holders to abuse the patent laws by attempting to extend the scope of their legal monopoly.

---

**1.** The current patent venue statute, 28 U.S.C. § 1400(b), is virtually unchanged from the 1897 Act.

Furthermore, the threat of multidistrict patent infringement suits brought far from an alleged infringer's place of business, and the costs associated with such suits, might produce anti-competitive effects. N. Waldrop, "The Patent Venue Statute, 28 U.S.C. 1400(b) Should Not be Repealed", 4 *APLA QJ* 32, 45, 50 (1976). To minimize the possibility of these abuses of the patent laws, section 1400(b) protects the alleged infringer from defending infringement suits outside the limited districts set forth in the statute and imposes the burden on the patent holder of suing far from its place of business. This interpretation of the legislative policy reflected in section 1400(b) supports a narrow and literal reading of the words of the statute.

Therefore, despite the volume of business generated in this district on Fleet's behalf, the mere presence of Fleet's sales representatives does not, absent a fixed location under Fleet's control, demonstrate a "regular and established place of business" located in the District of New Jersey. Consequently, as to Count I, I conclude that venue is improperly laid in this district. Instead of dismissing this count of the complaint against Fleet, however, I will, if Warner elects, transfer the case to the Western District of Virginia where Fleet has its principal place of business pursuant to 28 U.S.C. § 1406(a).[2]

Fleet's attorneys are requested to ascertain Warner's preference in this regard and then submit a form of order in conformity with this opinion.

---

**2.** 28 U.S.C. § 1406(a) provides:

The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.