Charles C. JOHNSTON, and Gordon P. Ramsey, as Trustees of the AMEC Liquidating Trust, Plaintiffs,

v.

IVAC CORPORATION, a Delaware Corporation, Defendant.

Civ. A. No. 86–1884–MA.

United States District Court, D. Massachusetts.

May 11, 1987.

Jerry Cohen, Cohen & Burg, Boston, Mass., Daniel R. Shulman, Eleanor M. Dilkes, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, Minn., for plaintiffs.

Zachary R. Karol, Bingham, Dana & Gould, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

The plaintiffs, two trustees of the AMEC Liquidating Trust ("trustees"), have brought this action for patent infringement against the defendant, IVAC Corporation. The defendant filed an answer and counterclaim seeking a declaratory judgment of patent invalidity and non-infringement. IVAC then moved to dismiss or transfer the case. I denied the motion to transfer

insofar as it was based on the convenience factors described in 28 U.S.C. § 1404(a). *See Memorandum and Order,* dated February 10, 1987. I deferred ruling on IVAC's motion to dismiss or transfer due to improper venue pending further discovery by the trustees. I have received additional briefs and other papers from the parties and am now prepared to rule on that motion as well.

### 1. *Facts*

The plaintiffs are trustees of a dissolved Massachusetts corporation which developed and sold electronic thermometers. IVAC is a Delaware corporation with its principal place of business in San Diego, California. The company is registered as a foreign corporation in Massachusetts. IVAC manufactures and markets medical and surgical devices, supplies, and equipment.

The trustees charge IVAC with infringement of a patent for temperature-sensing probes and disposable probe covers, which are used in connection with hospital electronic thermometers. IVAC markets these allegedly infringing thermometer systems through its Vital Signs Division, which has its headquarters in California. At the time the complaint was filed, that division employed two sales representatives who resided in Massachusetts and solicited sales in the district. One of those representatives has since resigned. Another IVAC division, the Fluid Delivery Division, employs seven sales representatives who service Massachusetts. Four of these representatives also live in the state. They sell products which are unrelated to those which are the target of this litigation.

IVAC has described in detail the activities of its representative who sells the thermometer device, Cheryl Burnette. It asserts that the sales representatives in the Fluid Delivery Division operate in a similar manner.[1]

Burnette works out of her home, as IVAC does not own or lease an office or any real estate in Massachusetts. She has not set aside a portion of her home as an IVAC office, nor does she receive customers or customer telephone calls there. When Burnette receives an order for a thermometer system, she forwards the order to the home office in San Diego, which reserves the right to accept or reject any orders sent to it. The order is then filled from either the San Diego office or other distribution centers outside Massachusetts. Customer payments are always sent to the San Diego office. IVAC maintains no bank accounts in Massachusetts.

Burnette's duties include filling out weekly sales reports and calling on hospitals for purposes of making sales. She sometimes meets with nurses or administrative personnel to demonstrate the use of an electronic thermometer with the probe member and disposable probe covers attached. On occasion she has observed the use of the electronic thermometer on a patient and then given the nurse advice on its proper use. Burnette keeps two probes and a case of probe covers on hand for demonstration and clinical evaluation purposes.

Burnette carries an IVAC business card which lists an office telephone number. That number is answered by an outside answering service, which merely takes messages for Burnette. She pays for the service and is reimbursed by IVAC. The sales representatives who work for the Fluid Delivery Division similarly receive messages at another telephone number, which is also answered by an outside answering service. Both telephone numbers are listed in several local telephone directories, although no addresses are listed with the numbers.[2]

**1.** While IVAC claims that my inquiry is limited to the Massachusetts activities of only those connected with the allegedly infringing thermometer system, *see In re Cordis Corp.,* 769 F.2d 733, 737 (Fed.Cir.1985), there is considerable authority supporting the proposition that I am to look at the contacts of *all* of the defendant's divisions. *See Gaddis v. Calgon Corp.,* 449 F.2d

1318, 1319–20 (5th Cir.1971); *Cabot Corp. v. WGM Safety Corp.,* 562 F.Supp. 891, 892 (D.Mass.1983). I thus consider the Massachusetts activities of all IVAC representatives.

**2.** IVAC initially claimed it had no telephone listings in Massachusetts directories. It admit-

Burnette is paid a salary and commissions for her sales, and IVAC pays her hotel and meal business expenses. She drives her own car while making sales calls, but IVAC reimburses her for mileage incurred. IVAC also provides Burnette with office supplies and reimburses her for postal expenses related to her work. Burnette is not reimbursed for the business use of her home, although the other thermometer representative who resigned after the suit was instituted did take tax deductions for the business use of his home.

Certain components of the thermometer system are manufactured in Massachusetts by Fenwal Electronics Company, which has no corporate affiliation with IVAC. IVAC claims that its relationship with Fenwal is merely one of buyer and seller. After the components are manufactured, they are shipped to IVAC for assembly outside of Massachusetts.

When IVAC's thermometer devices need servicing, they are returned to IVAC's California facility for repair. Other IVAC products are serviced in Massachusetts by Physio–Control Corporation, which, like IVAC, is owned by Eli Lilly & Company. Physio–Control is located outside of the state and dispatches repair persons to the state when required by IVAC's Massachusetts customers. The trustees have not produced any evidence tending to show that Physio–Control and IVAC are not separate and distinct corporate entities.[3]

### 2. *The Challenge to Venue*

IVAC bases its motion to dismiss or transfer on lack of venue. As I explained in my earlier *Memorandum and Order,* venue in patent infringement cases is governed exclusively by 28 U.S.C. § 1400(b). That statute provides:

Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or

where the defendant has committed acts of infringement and has a regular and established place of business.

For purposes of this venue statute, a corporation is a resident only of the state in which it is incorporated. *Fourco Glass Co. v. Transmirra Prod. Corp.,* 353 U.S. 222, 226, 77 S.Ct. 787, 790, 1 L.Ed.2d 786 (1957). As IVAC is incorporated in Delaware, it is not a resident of Massachusetts. The trustees thus rely on the second test to show that venue is proper in Massachusetts. To do so, they must establish that IVAC has *both* committed acts of infringement in Massachusetts and has a regular and established place of business in Massachusetts. *Cordis Corp. v. Cardiac Pacemakers,* 599 F.2d 1085, 1086 (1st Cir.1979). The trustees have the burden of proving that venue is proper now that IVAC has filed its motion to dismiss or transfer based on the lack thereof. *Id.*

### A. *Acts of Infringement*

The trustees first must show that IVAC has committed acts of infringement in this district. An act of infringement occurs when an unauthorized party makes, uses, or sells a patented invention or induces another to do so. 35 U.S.C. § 271. While IVAC's answer denies it has committed such acts of infringement, its briefs barely touch on whether the trustees have made an adequate showing for venue purposes. In any event, I find ample evidence that the trustees have met their burden of proof by showing that IVAC solicits sales in Massachusetts and that the thermometer devices are delivered to Massachusetts. Venue in this district is thus proper, even though the sales are subject to final approval in California and the orders are filled from various locations outside Massachusetts. The early view that an act of infringement could be established only in a district where a completed transaction had taken place, *W.S. Tyler Co. v. Ludlow–*

ted that claim is incorrect after the trustees discovered listings in several local directories.

**3.** All of the above facts are taken from representations made in the submitted affidavits and the parties' briefs. While the parties extensively rely on statements made at depositions to sup-

port their positions, they regrettably have failed to provide me with the relevant portions of the depositions. I thus am forced to rely on the parties' characterizations of the deposition testimony.

*Saylor Wire Co.*, 236 U.S. 723, 725, 35 S.Ct. 458, 459, 59 L.Ed. 808 (1915) (dictum), has given way to the view that an act of infringement could occur in any district where the defendant participates significantly in the marketing activities leading to the transaction's consummation. *See Union Asbestos & Rubber Co. v. Evans Prod. Co.*, 328 F.2d 949, 952 (7th Cir.1964); *Digital Equip. Corp. v. Electronic Memories & Magnetics Corp.*, 452 F.Supp. 1262, 1265 (D.Mass.1978); *Stanley Works v. Globemaster, Inc.*, 400 F.Supp. 1325, 1330–31 (D.Mass.1975).

### B. *Regular and Established Place of Business*

The second showing the trustees must make is that IVAC has a "regular and established place of business" in Massachusetts. This phrase has evoked a wide variety of opinions as to the type and extent of contacts which will satisfy the venue requirement. *See Omi Int'l Corp. v. MacDermid, Inc.*, 648 F.Supp. 1012, 1015 (M.D.N.C.1986). A greater uniformity of interpretation is expected to appear now that the Federal Circuit Court of Appeals has exclusive jurisdiction over final decisions of the federal district courts where district court jurisdiction is based in whole or in part on certain patent provisions. *See* 28 U.S.C. § 1295(a)(1). Up until this time, however, the Federal Circuit has decided only one case dealing with the place of business requirement of Section 1400(b). It is thus instructive to review the opinions from the other circuits' appellate and district courts. *Omi Int'l*, 648 F.Supp. at 1015 n. 2.

■ The courts do seem to be in agreement that the regular and established place of business standard requires more than the minimum contacts necessary for establishing personal jurisdiction or for satisfying the "doing business" standard of the general venue provision, 28 U.S.C. § 1391(c). *See Knapp–Monarch Co. v. Casco Prod. Corp.*, 342 F.2d 622, 625 (7th Cir.1965), *cert. denied*, 382 U.S. 828, 86 S.Ct. 64, 15 L.Ed.2d 73 (1965); *Case v. BASF Wyandotte*, 193 U.S.P.Q. 104, 105

(D.Mass.1976); *Stanley Works*, 400 F.Supp. at 1330. They are not in agreement, however, as to whether the regular and established place of business standard can ever be satisfied if the defendant does not control and pay for an office within the district from which it regularly conducts business.

■ One line of cases holds that venue is proper only if the defendant maintains, controls, and pays for a permanent physical location from which sales are made within the district. *See University of Illinois Found. v. Channel Master Corp.*, 382 F.2d 514, 516 (7th Cir.1967); *Warner–Lambert Co. v. C.B. Fleet Co.*, 583 F.Supp. 519, 522–24 (D.N.J.1984), and cases cited therein. These cases further hold that even where the defendant establishes an office in the district, venue is proper only if the sales representatives are authorized to actually consummate the sales they have solicited. *Warner–Lambert*, 583 F.Supp. at 524. Section 1400(b) is interpreted in such a restrictive way because "[t]he requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy, is to be given a 'liberal' construction." *Schnell v. Peter Eckrich & Sons*, 365 U.S. 260, 264, 81 S.Ct. 557, 560, 5 L.Ed.2d 546 (1961), quoting *Olberding v. Illinois Cent. R.R. Co.*, 346 U.S. 338, 340, 74 S.Ct. 83, 85, 98 L.Ed. 39 (1953). A restrictive reading of the statute discourages aggressive patent holders from abusing the patent venue statute by attempting to extend the scope of their legal monopoly. Furthermore, such a reading downplays the threat and potential anti-competitive effects of costly patent infringement suits brought far from an alleged infringer's place of business. *Warner–Lambert*, 583 F.Supp. at 525–26.

The Court of Appeals for the First Circuit appears to have followed the line of cases adopting a restrictive reading of the statute. In *General Radio Co. v. Superior Elect. Co.*, 293 F.2d 949, 951 (1st Cir. 1961), the court, relying on an older Supreme Court decision, held that venue did not lie in the district because the defend-

ant's local salesman "consummated no sales himself; his only duty with respect to sales was 'to solicit orders [and] forward them when received to the home office for execution.'" This fact was "determinative," *id.*, even though the defendant actually maintained a Massachusetts office.

A more recent First Circuit case dealing with the patent venue statute, *Cordis Corp. v. Cardiac Pacemakers*, 599 F.2d 1085 (1st Cir.1979), gave no hint that *General Radio's* ruling should be abandoned. In fact, the *Cardiac Pacemakers'* court relied on *General Radio* in affirming the district court's dismissal of one of the defendants. The corporate defendant had no place of business in Massachusetts, owned no real property or bank account in the state, and maintained no inventory in Massachusetts. The contract of sale in all cases ran between the defendant's exclusive sales agent and the ultimate buyer. The court concluded that the district court correctly found that the corporate defendant had no regular and established place of business in Massachusetts, for "the record establishes a much weaker case for [the plaintiff] than was presented by the unsuccessful plaintiff before this court in *General Radio Co. v. Superior Electric Co.*" *Id.* at 1087.

A contrary line of cases holds that the activities of a sales representative operating out of his home may satisfy the regular and established place of business requirement of the patent venue statute. See the discussions in *Herbert v. Diagnostic Prod. Corp.*, 231 U.S.P.Q. 909, 911 (S.D.N.Y.1986) [Available on WESTLAW, 1986 WL 6781], and *Warner–Lambert Co.*, 583 F.Supp. at 524–25. The courts which follow this line of cases depart from the requirement that the defendant control a fixed physical location and find venue is proper if the defendant does business through a permanent and continuous presence in the district. These courts reason that a defendant engaged in substantial activities in a district cannot avoid venue simply by not renting or not owning a formal office and having all its employees coordinate their activities by telephone or personal meetings. *See Instrumentation Specialties Co. v. Waters Assoc., Inc.*, 196 U.S.P.Q. 684, 689 (N.D.Ill. 1977). "This more generous reading of § 1400(b) does not drastically expand the possible venues for a patent infringement action or make the plaintiff's burden of proof easy.... [T]he presence of sales employees in the district is not enough." *Minnesota Mining and Mfg. Co. v. Johnson & Johnson Prod. Inc.*, 1 U.S.P.Q.2d 1992, 1995 (D.Minn.1986) [Available on WESTLAW, 1987 WL 10997].

The trustees rely on this line of cases to show that they have made a proper showing under the patent venue statute. They especially rely on *In re Cordis Corp.*, 769 F.2d 733 (Fed.Cir.1985), the one Federal Circuit case which deals with the requirements of Section 1400(b). In denying a petition for a writ of mandamus, that court upheld the district court's decision that venue was proper because of the activities of local sales representatives out of their homes. The court stated that

> "in determining whether a corporate defendant has a regular and established place of business in a district, the appropriate inquiry is whether the corporate defendant does its business in that district through a permanent and continuous presence there and not as [the defendant] argues, whether it has a fixed physical presence in the sense of a formal office or store."

*Id.* at 737.

In *Cordis*, the defendant employed two sales representatives to market cardiac pacemakers. Each was paid a salary plus commission and was supplied with a company car. The defendant did not have a bank account, nor did it own or lease any real property in the district. The sales representatives maintained offices in their homes, and together they kept around $90,-000 worth of the defendant's products on hand. Hospitals or physicians could obtain the pacemakers either through the out of state office via the sales representatives, or directly from the sales representatives out of their inventory. The two sales representatives also acted as technical consul-

tants through their presence in operating rooms during a significant number of surgical implantations of the devices. During the implantations they provided technical product information to the physicians. They also provided post-implantation consultation and gave presentations to medical personnel regarding technological developments.

The *Cordis* court stressed that it was deciding a petition for a writ of mandamus, a remedy "to be reserved for the most serious and critical ills, and if a rational and substantial legal argument can be made in support of the rule in question, the case is not appropriate for mandamus, even though on normal appeal, a court might find reversible error." 769 F.2d at 737. While it appears the court may have done away with the requirement that a defendant establish a fixed physical presence in the district, the court's decision supports only the holding that a "rational and substantial legal argument" can be made to uphold the district court's finding based on the local sales representatives' activities out of their homes.

The Federal Circuit's opinion "laid considerable stress on the precise facts of the case" in deciding to uphold the district court's finding. *Herbert*, 231 U.S.P.Q. at 912. The court in *Cordis* expressly distinguished that case from the *Channel Master* line of cases, which it gave "no indication" of overruling. *Herbert, id.* It laid special emphasis on the fact that the *Cordis* salesmen kept sizeable quantities of inventory on hand from which they could directly fill orders. Moreover, the *Channel Master* salesmen did not conduct seminars concerning the specific product which was the subject of the infringement action. In *Cordis,* the salesmen not only conducted seminars, they also acted as technical consultants both during and after implantation of the pacemaker. *In re Cordis*, 769 F.2d at 735, 737.

As the *Cordis* court took great pains to distinguish its case from *Channel Master,* and in light of the First Circuit law in this area, I feel I should follow *Channel Master.* The present case is much closer to the facts in *Channel Master* than to those in *Cordis.* The fact that IVAC is registered as a foreign corporation in Massachusetts is of no import, for mere "doing business" in Massachusetts is not enough to satisfy the pertinent venue statute. All orders received by IVAC's sales representatives are sent to the home office in San Diego, all orders are shipped to the customer from points outside Massachusetts, and all payments are made to the home office. Although the representatives keep small quantities of IVAC products in their homes for demonstration and clinical testing purposes, they do not keep inventory on hand to fill orders directly. The plaintiffs attempt to portray the sales representatives as more than mere sales solicitors by pointing out that Ms. Burnette once assisted a hospital in verifying the accuracy of its thermometers. Other salesmen have demonstrated the proper use of IVAC's intravenous devices, queried customers about their need for IVAC products, and dealt with certain types of minor customer complaints. But all of those activities are mere incidents of solicitation. *See General Radio*, 293 F.2d at 951. The nature of the technical assistance and service offered by these salesmen, who are prohibited from assisting in the implementation of actual medical procedures, is vastly different from the operating room assistance presented by the salesmen in *Cordis.*

■ As IVAC does not permit direct sales or keep any inventory in Massachusetts, and as the sales representatives do not provide extensive technical support, I find that IVAC does not operate its business in Massachusetts through a "permanent and continuous presence" like that described in *Cordis.* I further find that the Massachusetts business activities of both the company which manufactures component parts of the thermometer devices and the company which services certain IVAC products cannot be imputed to IVAC, for I have been presented with no evidence showing that their corporate forms should be disregarded. *Contrast Stanley Works*, 400 F.Supp. at 1331–33.

### 3. *Conclusion*

Venue is improper in the District of Massachusetts. In accordance with the above, IVAC's alternative motion to transfer the case is granted. The matter will be transferred to the judicial district where venue is proper, the Southern District of California.

SO ORDERED.