MAGICorp., a New York
Corporation, Plaintiff,

v.

KINETIC PRESENTATIONS, INCOR-
PORATED, a Delaware
Corp., Defendant.

Civ. A. No. 88–2582.

United States District Court,
D. New Jersey.

May 10, 1989.

David A. Jackson, Klauber & Jackson,
Hackensack, N.J., Myron Greenspan, Lill-
ing & Greenspan, White Plains, N.Y., for
plaintiff.

John N. Bain, Carella, Byrne, Bain &
Gilfillan, Roseland, N.J., Robert T. Edell,
Michael D. Schumann, Merchant, Gould,
Smith, Edell, Welter & Schmidt P.A., Min-
neapolis, Minn., for defendant.

OPINION

HAROLD A. ACKERMAN, District
Judge.

On June 14, 1988, MAGICorp brought
this action alleging that Kinetic Presenta-
tions, Inc. ("Kinetic" or "KPI") infringed
MAGICorp's United States Patent No.
4,181,955, and seeking permanent injunc-
tive relief, compensatory and treble dam-
ages, and attorney's fees. On July 11,
1988, Kinetic moved to dismiss the action
for improper venue under 28 U.S.C.
§ 1400(b) or, in the alternative, to transfer
the action to a district where there was
proper venue. I referred this motion to
United States Magistrate Stanley R. Ches-
ler for his report and recommendation ("R
& R"). In his R & R, filed on December
27, 1988, Magistrate Chesler recommended
dismissal of this action, finding insufficient
contacts in the district to constitute a "reg-
ular and established place of business"
here and finding that the defendant did not
commit acts of infringement in the dis-

trict—the two requisites for establishing venue under 28 U.S.C. § 1400(b).

█ Before me now are MAGICorp's objections to Magistrate Chesler's R & R, which I will assess without oral argument (on the papers) as contemplated by Rule 40(D)(5) of the General Rules of the United States District Court for the District of New Jersey. Before reaching the substance of MAGICorp's objections, let me lay out the procedural framework for assessing a magistrate's R & R pertaining to a dispositive matter. The Federal Magistrate's Act of 1968, *as amended,* 28 U.S.C. § 636(b)(1)(B), and General Rule 40(D)(5) of this District provide that this court can refer certain dispositive motions to the magistrate for a report and recommendation. This delegation of judicial power does not violate Article III of the United States Constitution so long as this court ultimately decides the referred matter. *See United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980). The standard of review for such a report and recommendation is de novo—that is, analyzing the objected to portions of the report as if the magistrate had not previously rendered a report in this matter. *See, e.g., United Steelworkers of Am., AFL–CIO v. New Jersey Zinc Co.,* 828 F.2d 1001 (3d Cir.1987).

## FACTS

On January 1, 1980, the United States Patent Office issued United States Letters Patent No. 4,181,955 (the "Patent") to MAGICorp's predecessor in interest. On or about September 20, 1985, MAGICorp was assigned ownership of the patent—an assignment which the United States Patent and Trademark Office recorded.

The patent's abstract described the system patented:

Apparatus for automatically generating photographic pictures, such as 35 mm slides, includes a number of microcomputer terminals at scattered locations, a central computer at a location remote from these terminals and a picture producing device for creating photographic pictures from computer generated data.

The microcomputer terminals are each provided with a color display and input keyboards for enabling the user to enter data. The terminals are programmed to generate and display in color a number of standard graphical representations having certain variable characteristics. A particular representation and its characteristics are entered by users through the terminal input as answers to questions presented by the terminal. The terminals are capable of modifying the display of a graphical representation in response to user entries which change the answers to the questions so as to create a final set of answers. When a graphical representation is complete, to the satisfaction of the user, data representing the user's final answers are transmitted from the terminal to the central computer. The central computer is programmed to generate data defining the raster points for the standard graphical representations based on the data representing the user's final answer. These raster points define a graphical representation with enhanced resolution over that generated and displayed by the terminal. Finally, the picture producing device creates photographic pictures (slides) from the higher resolution raster point data generated by the central computer.

It came to the plaintiff's attention that Kinetic had developed a presentation graphics software system which was personal-computer based. The system featured, among other things, a method to create business presentation slides—a feature which the plaintiff's patented system contained. The plaintiff averred that the defendant's system operated in an analogous manner to the plaintiff's system because the defendant's system included "a software module for transmission of images to other systems at locations remote from the personal computer which the original graphics created for the purpose of production of high quality slides, transparencies, or other media." (*See* Complaint ¶ 12). The defendant established certain service bureaus (none in New Jersey)

which received the data from the computers, either by mail or by telephonic-computer interface, and then produced the above-mentioned graphic products. The plaintiff charged in its complaint that the defendant was making, selling, and/or offering its allegedly infringing product for sale since as early as January, 1987.

To aid in the sale of its product, the defendant employs Mr. John Scott Carothers as a sales executive (Vice–President of the North Atlantic region). In the ten states comprising what the defendant labels its "North Atlantic region," Mr. Carothers is the defendant's sole representative (Carothers Dep. at 14). Kinetic started leasing office space for Mr. Carothers at One Madison Street, East Rutherford, New Jersey on November 1, 1986,[1] about an hour's one-way commute from Mr. Carothers' residence in Mt. Tabor, New Jersey. Previously, from August, 1986 to February, 1987, Mr. Carothers operated out of his Mt. Tabor home. Mr. Carothers now spends about two days a week in the New Jersey office, but the lion's share of his time is spent on the road, traveling from state to state in his region to promote and to solicit on behalf of the defendant's products (Carothers Dept. at 10).[2]

Mr. Carothers' duties and functions are generally in the area of solicitation or promotion. Although Mr. Carothers holds a vice-president's title with Kinetic, he is not vested with signatory authority (Carothers Dep. at 10). In fact, there is no company checkbook at the New Jersey location (*Id.* at 43). Mr. Carothers' duties are "to promote the product, support the product and establish name recognition for the product" (*Id.*). In addition, Mr. Carothers promotes a different product for another division of the Kinetic. At the time of his deposition, Mr. Carothers was spending 85% of his time promoting the other product. A secretary in the corporate office in Louisville,

Kentucky provides Mr. Carothers with office support (*see* Carothers Dep. at 18). He has no secretarial support in New Jersey, but for the occasional use of a "temp" (*see* Schuhmann Aff. ¶ 9). Mr. Carothers has no authority to sell the allegedly infringing product; as Mr. Carothers noted, "[sales are] consummated or transacted or takes place at the corporate offices in Louisville. They authorize the sale." (Carothers Dep. at 31; *see also* Schuhmann Aff. ¶ 14, stating that, "[e]very order for KPI products must be accepted and approved by the KPI home office in Louisville, Kentucky office"). Mr. Carothers also has no responsibility for collection of receipts or purchase payments. Mr. Carothers drives a company car registered in Kentucky with Kentucky license plates (Carothers Dep. at 19).

It is apparent that little corporate activity occurs in the New Jersey offices. Mr. Carothers occupies the New Jersey office, on average, about 2 days a week. The office's telephone number is listed in 2 New Jersey directories. When Mr. Carothers is not present to answer the telephone, the calls are forwarded for reception at the Kentucky office (*see* Schuhmann Aff. ¶ 12). When Mr. Carothers is not in the office (over 50% of the time), he locks the office (Carothers Dep. at 15). The defendant makes no sales from its New Jersey office (Carothers Dep. at 31). The defendant receives all purchase orders from its customers at its home office in Louisville, Kentucky (Schuhmann Aff. ¶ 24). The defendant ships its orders from its Louisville, Kentucky office. Customers make payments to the Louisville, Kentucky office (Schuhmann Aff. ¶ 16). If customers need assistance or service, then they call the defendant's Louisville, Kentucky office. The Kentucky office, not the New Jersey office, processes all warranty work. All packaging, invoicing, and shipping notices

---

**1.** The lease was for three years with an option to renew for an additional three years (Schuhmann Aff. ¶ 7). The corporate office in Louisville, Kentucky pays all of the bills for the New Jersey office.

**2.** For instance, Mr. Carothers described a typical work week: after his deposition, he was

scheduled to fly to Washington, D.C. for 2 days, and then to Louisville, Kentucky, and then back to New York for 3 days of meetings, then to Connecticut and then to Vermont, with an eye toward establishing appointments in Boston after that (Carothers Dep. at 22).

do not carry the New Jersey address, although certain promotional brochures do (*Id.* at 20). Moreover, the defendant does not display any products in the New Jersey office, nor has the defendant used the office for any demonstrations or other sales promotions. In fact, no customers come to the office (*Carothers Dep.* at 24–25).

Further, the defendant does not use its New Jersey location for storage. The defendant does not have any inventory in the New Jersey office (Schuhmann Aff. ¶ 13 and Carothers Dep. at 24). The defendant files only correspondence and prospective sales information in New Jersey. The defendant keeps its customer master files, purchase orders, invoices, and shipping documents in Louisville, Kentucky (Schuhmann Aff. ¶ 15). Also, the bulk of the defendant's sales literature is in Louisville, Kentucky, not in New Jersey. (*Id.* ¶ 22). The defendant mails its sales literature for the North Atlantic region out of the Louisville office.

The defendant's New Jersey office provides the defendant and Mr. Carothers with a place for receiving overnight package deliveries. Mr. Carothers could not have such deliveries sent to his home address because it was a post-office box and because he was not usually home and did not have neighbors who would accept packages for him. Leasing the office obviated these shortcomings since the office had a street address and since neighboring tenants would accept the deliveries or the delivery service could leave parcels at a weather protected area at the office's entrance (Schuhmann Aff. ¶ 10).

*Magistrate Chesler's R & R*

Magistrate Chesler recommended that I dismiss the action for improper venue because (1) the plaintiff did not establish that the defendant had maintained a "regular and established" place of business in New Jersey and (2) the plaintiff did not establish that the defendant's acts of infringement occurred in New Jersey—the two requisites for maintaining venue in the district, where, as here, the business is not incorporated in the forum's district. *See* Magistrate's R & R, at 14.

With regard to whether the defendant had a "regular and established place of business," in New Jersey, Magistrate Chesler first discerned that the appropriate inquiry should focus on "the nature of the defendant's presence with the district." *Id.* at 5. Magistrate Chesler found that the defendant did not have a *regular* place of business in New Jersey because the office only operated when Mr. Carothers was in town and, therefore, the office was closed up to 60% of the time; and Mr. Carothers only spent 15% of his time selling the defendant's product. *Id.* at 7. Magistrate Chesler further reported that there were insufficient indicia of an established place of business inasmuch as the office contained no receptionist, secretary, customer records, or "any other significant indicia of an *established* business." *Id.* (emphasis in original). Rather, Magistrate Chesler posited that the New Jersey office was merely a "mail drop" for packages sent to Mr. Carothers. *Id.* Citing Mr. Carothers' testimony and Mr. Schuhmann's affidavit, the Magistrate buttressed his conclusion, pointing out that (1) Mr. Carothers spent 85% of his time promoting the defendant's sister division's product; (2) Mr. Carothers spent only two out of five business days per week in the New Jersey office; (3) when Mr. Carothers was not present in the office, the office was locked and calls to the New Jersey office were forwarded to Kentucky; (4) no inventory or demonstration equipment were in New Jersey; (5) no customers ever came to the New Jersey office; (6) the office never received customer payments for sales; (7) the defendant retained no New Jersey bank accounts; and (8) the defendant did not authorize Mr. Carothers to consummate sales, rather the Kentucky office consummated sales and shipped products. *Id.* at 6–7.

With regard to whether the defendant incurred acts of infringement, Magistrate Chesler first observed that the plaintiff relied on the theory that the defendant directly infringed the plaintiff's patent in predicating venue. *Id.* at 7–8. Magistrate Chesler assumed that an infringing use had taken place. *Id.* He then defined the

scope of his inquiry as whether the *defendant's* alleged acts of infringement occurred in New Jersey for venue purposes. Magistrate Chesler rejected the plaintiff's argument that the acts of the defendant's New Jersey customers could be imputed to the defendant for venue purposes on a theory of direct infringement. *Id.* at 9.

Magistrate Chesler observed that patent at issue was a combination patent and reasoned that it could therefore not be infringed unless the infringing device contained all of the elements set forth in the patent's claim. Accordingly, Magistrate Chesler found that there could be no infringement until the defendant performed "the critical step of converting an electronic data received from the customer onto photographic media such as a 35 mm slide." *Id.* at 10. Since this step occurred at service bureaus outside the state, Magistrate Chesler reported that the defendant could not have incurred the alleged acts of infringement in New Jersey. *Id.* at 10.

Magistrate Chesler therefore recommended that I should dismiss this action since the plaintiff failed on both prongs of the conjunctive test to determine proper venue. *Id.* at 14.

*Objections to Magistrate Chesler's R & R*

MAGICorp objects vehemently to the R & R, taking issue with the Magistrate's factual determinations and his interpretation of the law. The plaintiff contends that Magistrate Chesler erred in finding that the defendant leased the office for mere convenience because Mr. Carothers, himself, viewed the office as a nuisance. The plaintiff further contends that the defendant actually established the New Jersey office as the hub of its North–Atlantic region operations, equally distant from the most removed points in Mr. Carothers' sphere of influence. The plaintiff also asserts that Mr. Carothers performed 100% of the defendant's needs and requirements in New Jersey, promoting the defendant's product and that by forwarding telephone calls to Kentucky when Mr. Carothers was out of the office, the defendant sought to convey a full-time presence in New Jersey. The plaintiff also points out that the defen-

dant distributed thousands of brochures in New Jersey. Moreover, the plaintiff recognizes that the defendant is licensed to do business in New Jersey. Thus, the plaintiff calls into question Magistrate Chesler's observation that the office was merely a "mail drop." In this regard, the plaintiff further points out that the defendant's office telephone number is listed in two New Jersey telephone directories; that the office contains three desks, four chairs, computer and a printer—"certainly more than one would find inside a 'mail box,'" and that the defendant's name appears outside the office, on the directory to the complex in which the office lies and on a reserved parking space. Plaintiff's Objections at 12–13. Hence, the plaintiff concludes that the defendant's New Jersey office plus its activities in New Jersey clearly show that the defendant had a "regular and established place of business" in New Jersey.

The plaintiff also asserts that the defendant did indeed commit acts of patent infringement in New Jersey. It argues that the defendant completes the acts of infringement when its ships the final products back to its customers and that the plaintiff is damaged in New Jersey. It also argues that all of the acts in the chain of a combination patent are infringing acts whether executed by the customer or the defendant. Per the plaintiff, these factors indicate that the defendant did indeed effect infringing acts in New Jersey.

The defendant responds to the plaintiff's objections, essentially reiterating what it had argued to Magistrate Chesler. In its response, it emphasizes that the office was merely for accepting deliveries since Federal Express and other delivery services would not deliver to P.O. boxes, and that on several occasions where packages were left outside Mr. Carothers' home, the inclement weather destroyed them. It points out that the uncontraverted facts adduced before Magistrate Chesler show that the defendant does not conduct essential business functions out of the New Jersey office. The defendant thus retorts that Magistrate Chesler was correct in concluding that the defendant did not have "a regular

and established place of business" in New Jersey.

As for the plaintiff's argument that there were direct acts of infringement in New Jersey, the defendant asserts that the shortcoming in the plaintiff's argument is that the Kentucky service bureau is never simultaneously connected in the same system with its New Jersey customers, because Kinetic has no equipment to create a slide simultaneously with the reception of the graphics information from the customer. *See* Defendant's Reply to the Plaintiff's Objections at 13 (*citing* Reid Aff. ¶ 10). Based on this fact, the defendant contends that the alleged infringing use could not have occurred in New Jersey.

## DISCUSSION

I have examined the entire record, *see Sullivan v. Cuyler*, 723 F.2d 1077, 1085 (3d Cir.1983) (district court judge must review the entire record), and I agree with Magistrate Chesler's outcome.

Congress provided the following rule for assessing proper venue in patent infringement actions:

> Any civil action for patent infringement may be brought (1) in the judicial district where the defendant resides, or (2) where the defendant has committed acts of infringement *and* has a regular and established place of business.

28 U.S.C. § 1400(b) (emphasis added). This provision is the exclusive test for determining venue in a patent infringement action. *See Silicon Technology, Inc. v. United Refractories*, 632 F.Supp. 1, at 1 (W.D.Pa. 1985) (*citing Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 229, 77 S.Ct. 787, 792, 1 L.Ed.2d 786 (1957) *and Ackerman v. Hook*, 183 F.2d 11, 14 (3d Cir.1950)). When faced with a patent-venue challenge, courts should restrictively construe the venue provision. *Warner–Lambert Co. v. C.B. Fleet Co., Inc.*, 583 F.Supp. 519, 525–26 (D.N.J.1984) (Debevoise, J.);[3] *see Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260, 264, 81 S.Ct. 557, 560, 5 L.Ed.2d 546 (1961). The plaintiff carries the burden of establishing proper venue. *See, e.g., Liqui–Box Corp. v. Reid Valve Co., Inc.*, 672 F.Supp. 198, 199 (W.D. Pa.1987).

The plaintiff can usually satisfy the venue test in one of two ways under the statute. However, since the corporation's *residence* for the purpose of § 1400(b) is its place of incorporation, *see Fourco*, 353 U.S. at 226, 77 S.Ct. at 790, and since the defendant is a Delaware corporation, the first option under the statute is unavailable to the plaintiff in this action. The plaintiff is therefore left to prove both (1) that the defendant has committed acts of infringement in the District of New Jersey *and* (2) that the defendant has a regular and established place of business in the district. *See* 28 U.S.C. § 1400(b). Failure of proof as to either of these prongs is fatal to the plain-

---

**3.** In *Warner–Lambert*, Judge Debevoise discounted the argument that the courts should read the venue statute broadly. He observed that prior to 1897, the enactment date of the present-day venue statute's predecessor (which is virtually the same as the present-day provision), a plaintiff could sue on a theory of patent infringement in any state where the defendant could be found. So the 1897 statute actually restricted the plaintiff's ability to sue in any venue. Thus, Judge Debevoise reasoned that the § 1400(b)'s purpose was to restrict venue. 583 F.Supp. at 525 & n. 1 (*citing Stonite Co. v. Melvin Lloyd Co.*, 315 U.S. 561, 565–66, 62 S.Ct. 780, 782–83, 86 L.Ed. 1026 (1941)).

Judge Debevoise further cemented his conclusion of restrictive interpretation by assessing the policies furthered by a narrowly construed patent venue statute. He reasoned that a narrowly construed statute would further Congress' intention to prevent patent law's use for oppressive economic purposes. *Id.* Judge Debevoise explained:

> Given the nature of the property right protected by the patent laws, a monopoly is created within the boundaries defined by the patent claims. Ease in bringing patent infringement suits wherever an alleged infringer can be found would encourage aggressive patent holders to abuse the patent laws by attempting to extend the scope of their legal monopoly. Furthermore, the threat of multidistrict patent infringement suits brought far from an alleged infringer's place of business, and the costs associated with such suits, might produce anti-competitive effects.

*Id.* at 525–26. The burden of bringing suit in a foreign territory should be on the plaintiff. Hence, Judge Debevoise concluded that a proper construction of the venue statute would be a narrow one.

tiff's position, as the test is conjunctive. *See, e.g., Liqui–Box Corp.*, 672 F.Supp. at 198–199; *Silicon Technology, Inc.*, 632 F.Supp. at 1–2; *see also Ballard Medical Products v. Concord Laboratories*, 700 F.Supp. 796, 799 (D.Del.1988). I will assess the two requirements of this test in reverse order, starting with whether the defendant has a *regular* and *established* place of business in New Jersey.

## I. *Regular and Established Place of Business*

■ With regard to this aspect of the venue test, courts and commentators alike are clear that there is no definitive formula for assessing whether the defendant has "a regular and established place of business" in the district. *See, e.g., Ballard Medical Products*, 700 F.Supp. at 799; 7 E. Lipscomb, *Walker on Patents*, § 23:8, at 65–66 (3d ed. 1988). This prong of the venue test, however, requires greater contacts than were necessary under the "doing business" test formerly articulated in the generic venue statute, 28 U.S.C. § 1391(c). *See, e.g., Omi Int'l Corp. v. MacDermid, Inc.*, 648 F.Supp. 1012, 1015 (M.D.N.C.1986); 7 E. Lipscomb, *supra*, § 23:8, at 66 & n. 18 (both citing cases).[4]

The United States Court of Appeals for the Federal Circuit has discerned in *In re Cordis Corp.*, 769 F.2d 733, 735 (Fed.Cir. 1985), *cert. denied*, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985), that:

> [I]n determining whether a corporate defendant has a regular and established place of business in a district, the appropriate inquiry is whether the corporate defendant does its business in that district through a permanent and continuous presence there and not ... whether it has a fixed physical presence in the sense of a formal office or store.

In this circuit, another district court paraphrased this standard:

> Although a fixed physical presence in the judicial district is not required, a majority of courts have found that the physical location over which defendant exercises

control *and where defendant engages in a substantial part of its ordinary business in a continuous manner* is sufficient to find a regular and established place of business.

*Ballard Medical Products*, 700 F.Supp. at 800 (Schwartz, J.); *see also Silicon Technology, Inc.*, 632 F.Supp. at 2 (*quoting L.D. Schreiber Cheese Co. v. Clearfield Cheese Co.*, 495 F.Supp. 313, 317 (W.D.Pa. 1980)). Accordingly, where, as here, it is undisputed that the defendant leases office space in the district, it is necessary for the court to inquire whether the plaintiff has proved that the defendant engages in a substantial part of its ordinary business in a continuous manner in the district—New Jersey. In this regard, important factors include whether the defendant employs sales representatives in the district and, if so, "[1] whether these employees work exclusively for the defendant and [2] whether they are authorized to consummate sales as opposed merely to solicit orders within the district." *Warner–Lambert Co.*, 583 F.Supp. at 524.

In the instant action, the defendant indeed employed one salesman in the North–Atlantic region, including New Jersey—namely, Mr. Carothers. But, the defendant has brought forth undisputed evidence that Mr. Carothers splits his time between working for Kinetic Software Corp. and KPI and that Mr. Carothers does not possess the authority to consummate sales. Since the defendant has shown the presence of these two factors and the plaintiff has not disproved same, the defendant has demonstrated that the two important factors articulated in *Warner–Lambert*, 583 F.Supp. at 523–24, militate in its favor and, consequently, against a finding of proper venue. However, while proof of these factors darkens the venue issue against the plaintiff, the plaintiff could still save the day by propounding other evidence indicating that the defendant conducts a substantial part of its ordinary business in New Jersey. It, however, has not done so.

---

**4.** Therefore, the plaintiff's observance that the defendant is licensed to do business in New

Jersey, without more, is of little moment to the venue determination.

In fact, the defendant puts forth overwhelming evidence that it conducts nearly all of its ordinary business, besides solicitation, in Kentucky. For instance, it consummates sales and other transactions in Kentucky, not New Jersey. It collects payments in Kentucky, not New Jersey. It ships orders from Kentucky, not New Jersey. It processes all warranty work in Kentucky, not New Jersey. If customers need assistance, then they call Kentucky not New Jersey. It stores almost all of its files in Kentucky, not New Jersey. It mails its sales literature from Kentucky, not New Jersey. All that the plaintiff can show in response to the defendant's weighty contrary evidence is that the defendant leases an office in New Jersey (1) for one salesman, who nonexclusively solicits and promotes the allegedly infringing product for the defendant and (2) for the defendant and its sole employee in the district to have a convenient place to receive deliveries. This evidence does not rise to a level indicating that the defendant had a "regular and established place of business in New Jersey."

As recognized above, the defendant, at best, merely solicits and/or promotes business out of the New Jersey office through the work of one salesman who spreads himself over a ten-state range. The law is clear that "[a]n office that serves only as for solicitation of orders without more is not a regular and established place of business." 7 E. Lipscomb, *supra*, § 23:8, at 69 & n. 6 (*citing Potter Instrum. Co. v. Control Data Corp.*, 169 U.S.P.Q. 86 (S.D.Ind. 1971)); *see also id.* § 23.8 at 73 ("the burden of proving such a place of business is not by showing that the defendant maintains a one room office staffed by a clerk who merely takes orders and sends them to another state for acceptance or rejection"). The *Control Data Corp.* action, *supra*, cited *Tyler Co. v. Ludlow–Saylor Wire*

*Co.*, 236 U.S. 723, 725, 35 S.Ct. 458, 459, 59 L.Ed. 808 (1915) and *Gen'l Radio Co. v. Superior Elec.*, 293 F.2d 949 (1st Cir.1961), both holding that one sales representative staffing an office was insufficient to pass the "regular and established" business test of 28 U.S.C. § 1400(b). *See* 169 U.S.P.Q. at 87. These cases are so close to the instant facts that I find them controlling. For instance, in *Tyler*, as here, the lone (employee) salesman in the defendant's office solicited sales for two entities. *See* 236 U.S. at 725, 35 S.Ct. at 459. In *Gen'l Radio*, as here, the lone (employee) salesman in the defendant's office (even aided by a secretary) solicited orders from five New England states. 293 F.2d at 950–51. Mindful of these comparable actions, and in view of my earlier analysis of the evidence, I find that the plaintiff has not carried its burden of showing that the defendant had a "regular and established place of business" in New Jersey.[5] Although, failure on this prong is sufficient to find improper venue, I will briefly touch on the other prong of the venue test.

## II. *Act of Infringement*

■ Committing an "act of infringement" in the district is the other necessary element of the second method for establishing venue under 28 U.S.C. § 1400(b).

In its objections, the plaintiff appears to concede that, for venue purposes, it is relying on a theory of direct infringement under 35 U.S.C. § 271(a). This section states that "whoever ... makes, *uses* or sells any patented invention, within the United States during the term of the patent [without the authority of patented owner] ... infringes the patent." The plaintiff takes issue with Magistrate Chesler's determination, observing that the patent at issue is a combination patent, whose "front end" (customer input) and "back end" (output at

---

**5.** The plaintiff contends that I should follow Professor Chisum and the cases that he cites for the proposition that for venue purposes:

Generally, any physical location at which business is conducted will suffice, no matter what the amount or character of the activity. 5 D. Chisum, *Patents*, § 21.02[2][d], at 21–65 & n. 40 (*citing* cases). However, in a parentheti-

cal, immediately following this excerpted passage, Professor Chisum recognizes that "[s]o called sales offices are a possible exception." *Id.* (*citing, e.g., W.S. Tyler Co.*, 236 U.S. at 723, 35 S.Ct. at 458). As stated in text, the instant case falls squarely within the boundaries of the sales office cases.

the defendant's service bureaus' processing computers) are both absolutely critical to the successful operation of the system at issue. The plaintiff states:

> To the extent ... that a customer dials and connects to defendant's service bureau and utilizes that design station in a manner covered by the patent, the defendant's customer's activities constitute *direct infringement* and defendant's activities *at the other end*, while so connected to a New Jersey customer's terminals, also constitutes *direct infringement* since the parties at both ends are simultaneously utilizing the same patented system.

Plaintiff's Objections, at 34. The plaintiff, however, does not cite to any record facts for the proposition of simultaneous connection in the defendant's system or to any law stating that its argument of simultaneous connection is outcome-determinative. I, therefore, find the plaintiff's objections unavailing.

It is clear that in establishing an act of infringement in the district for venue purposes, it is enough that the *accused's* acts, if proven, would constitute patent infringement. *See Ballard Medical Products*, 700 F.Supp. at 799 (*citing, e.g., In re Cordis Corp., supra*, 769 F.2d at 737) (emphasis added). So it is the *defendant's* acts which must provide the basis for venue on a use claim. Accordingly, Magistrate Chesler reported, "the plaintiff cannot rely upon the location of the defendant's customers as a basis for determining where defendant's own acts of infringement took place." Magistrate's R & R, at 9. Such reliance, the Magistrate reasoned, would ground the plaintiff's cause in a theory other than direct infringement and, thus, could not serve as the predicate for venue here.

As the excerpted passage from the plaintiff's objections recognizes, it is clear that defendant's direct use of the patented system is at its service bureaus (the "back end") in sites other than New Jersey, where it converts data received from customers into the desired product. The plaintiff has not shown that the defendants,

themselves, use the system in New Jersey. Rather, it is at the processing center that the defendant allegedly uses the patent system, executing an alleged act of infringement.

Hence, I agree with the analogy that Magistrate Chesler applies from *Decca Ltd. v. United States*, 544 F.2d 1070, 1074–75, 210 Ct.Cl. 546 (1976). In *Decca*, at issue was a navigation system which had master stations in the United States and a subordinate station abroad. There, the court concluded that infringement took place at the master stations, rather than at the subordinate stations, because all of the stations had to be brought into synchronization with the master stations. 544 F.2d at 1074. Similarly, here, the conversion of the information, the critical task in the patented process, takes place at the service bureaus outside New Jersey. As in *Decca*, when considering the patented process as a "unity," the location of the process, and thus the infringement, must be where the master station/service bureau is located. That location is not in New Jersey. Therefore, I do not find that the defendant's alleged infringing acts took place in New Jersey for venue purposes.

## CONCLUSION

For the above reasons, I agree with Magistrate Chesler's report and recommendation, finding that the plaintiff has not proved (1) that the defendant has committed acts of infringement in the district and (2) that the defendant has a regular and established place of business in the district. Accordingly, I dismiss this action because this district is not the proper venue for this action.

## REPORT & RECOMMENDATION

STANLEY R. CHESLER, United States Magistrate.

This matter comes before me on defendant's, Kinetic Presentations, Inc. (hereinafter "Kinetic"), motion to dismiss or transfer for improper venue pursuant to 28 U.S.C. § 1400(b). This matter was referred to me by the Honorable Harold A. Acker-

man. That argument was heard on October 12, 1988.

## INTRODUCTION

Plaintiff, MAGICorp (Magicorp) brought this action alleging that Kinetic infringed United States Patent 4,181,955 thereinafter "955 patent"). The patent covers a computer network for automatically generating photographic pictures such as 35 mm slides. (Plaintiff's brief in opposition to defendants motion at 2). Graphics software enables end users, generally customers, to create graphic images on their computers. These graphic images can be electronically sent, via modem, to a processing site where they are converted onto photographic media such as 35 mm slides. (Plaintiff's brief in opposition at 8–10). Defendant Kinetic manufactures graphics software for use in creating computer graphic images.[1] It also maintains processing sites (Kinetic Presentations Centers) which receive electronic data for conversion onto photographic media. Presently, these processing centers are located in Kentucky, Illinois, and California. Kinetic does not maintain any service centers in New Jersey, nor does it have any other hardware in New Jersey.

## DISCUSSION

Venue in patent infringement actions is governed exclusively by 28 U.S.C. § 1400. *Fourco Glass Co. v. Transmirra Corp.*, 353 U.S. 222, 229, 77 S.Ct. 787, 792, 1 L.Ed.2d 786 (1957). It provides that

> [a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

28 U.S.C. § 1400.

Under the terms of the statute then, venue is proper if the action is 1) brought in the judicial district where the defendant resides or 2) where the defendant has committed acts of infringement and has a regular and established place of business. Under the former basis for venue, a corporation "resides" only in the state where it is incorporated for purposes of the venue patent statute. *Brunette Machine Works Ltd. v. Kockum Ind., Inc.*, 406 U.S. 706, 707 n. 2, 92 S.Ct. 1936, 1937 n. 2, 32 L.Ed.2d 428 (1972). Since Kinetic is a Delaware corporation.[2] (Schuhmann affidavit at para. 2), venue can only be based where the defendant has a regular and established place of business and where defendant has committed acts of infringement.

## A) REGULAR AND ESTABLISHED PLACE OF BUSINESS

In determining whether a defendant has a regular and established place of business under § 1400(b), courts have looked at a myriad of factors and have articulated a number of tests. While most courts agree that merely doing business within a district is not sufficient to confer venue under § 1400(b), courts appear to be divided as to the significance of a permanent physical location. In *Mastantuono v. Jacobsen Manufacturing Co.*, 184 F.Supp. 178, 180 (S.D.N.Y.1960), the court held that the defendant must be "regularly engaged in carrying on a substantial part of its ordinary business on a permanent basis in a physical location within the district over which it exercises some measure of control." Id. at 180. *Mastantuono* has generated a line of cases construing the relevant inquiry under section 1400 as whether the defendant has a permanent physical location within the district under its control from which it regularly conducts its business. *See, e.g. Dual Manufacturing and Engineering v. Burris*, 531 F.2d 1382, 1388 (7th Cir.1976) (Defendant had a regular and established place of business within the district where it leased premises for a permanent showroom and office for its sales representatives). *Clopay v. Newell Co., Inc.*, 527 F.Supp. 733, 740 (D.Del.1981) (Defendant had a regular and established place

---

**1.** According to a Magicorp official, Harold S. Schecter, the sale of the Kinetic software by itself does not infringe the 955 patent. (Schecter deposition at 159–60).

**2.** Kinetic has its principal place of business in Louisville, Kentucky.

of business within the district where it rented space to accommodate ten full time salespersons.) *IPCO Hospital Supply v. Les Fils D'Auguste, Etc.*, 446 F.Supp. 206, 208 (S.D.N.Y.1978) (Defendant did not have a regular and established place of business within the district where it did not own or control any physical location.)

In *Warner Lambert Co. v. C.B. Fleet Co., Inc.*, 583 F.Supp. 519 (D.N.J.1984) the court, recognized that the existence of a physical location was an important factor in determining whether the defendant maintained a regular and established place of business. It nevertheless concluded that the presence of a physical location alone was not sufficient to satisfy the standard. In addition, the court examined the relationship between the defendant's representatives (based at the location) and the defendant in order to determine whether the representatives worked exclusively for the defendant and whether they were authorized to consummate sales as opposed to merely soliciting orders. *Id.* at 524. This shift in focus is highlighted by the Federal Circuit's decision in *In re Cordis*, 769 F.2d 733 (Fed.Cir.1985). In that case, the court held that the appropriate inquiry in determining whether a defendant has a regular and established place of business is whether the corporate defendant does business in that district through a permanent and continuous presence there, and *not ... whether it has a fixed physical presence in the sense of a formal office or store. In re Cordis*, 769 F.2d 733, 737 (Fed.Cir.1985).[3] (emphasis added). While downplaying the significance of a fixed physical location in the district, this standard, consistent with the analysis in *Warner–Lambert* places special emphasis on the nature of the defendant's presence within the district. This court must, of course, apply the test articulated in *In re Cordis*, to the instant case.

*Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564 (Fed.Cir.1984).

In the instant case, Kinetic maintains leased office space within the State of New Jersey. Kinetic contends, that the reason for the office in New Jersey is for the convenience of a sales executive, Mr. Carothers, who happens to live in New Jersey.[4] Mr. Carothers is in charge of defendant's North Atlantic sales region which encompasses ten states including Connecticut, Delaware, Massachusettes, Rhode Island, New Jersey, Maine, parts of New York, Pennsylvania, and Maryland. (Carothers deposition at 8, 14).

Kinetic asserts that the New Jersey office serves primarily as a "maildrop" for packages sent to Mr. Carothers. The office contains no secretary or receptionist, and Mr. Carothers appears to be the only Kinetic employee at the office. (Carothers deposition at 21).

While Mr. Carothers conducts some promotional activity on behalf of the defendant at the office, he does not work exclusively for the defendant. Mr. Carothers also works for a separate company, Kinetic Software Corporation, which manufactures a product, Kinetic Access, not involved with the current law suit (Carother's deposition at 16–17). Mr. Carothers spends approximately 85% of his time on activities related to Kinetic Access. (Carothers deposition at 17–18) with the balance presumably on activities related to the defendant's product. Mr. Carothers spends only two out of five days in New Jersey with the rest of his time spent travelling in other states in his sales territory. (Carothers Deposition at 14). When Mr. Carothers is not at his New Jersey office, the office is locked up, and his calls are transferred to Louisville, Kentucky. (Carothers Deposition at 15, 21). No product inventory nor demonstration equipment is maintained at

---

**3.** In *In re Cordis,* the Federal Circuit refused to issue a writ of mandamus compelling the district court to transfer a case with operative facts marginally similar to the instant case. In determining whether the defendant Cordis Corporation had a regular and established place of business in Florida, the District Court articulated a standard focusing on the nature of the defen-

dants' activities rather than the existence of an actual physical office location within the state. *In re Cordis,* 769 F.2d at 735–36.

**4.** Kinetic asserts that if Mr. Carothers lived in Connecticut, the office would have been located in Connecticut. (Defendants brief at 17).

the New Jersey office. (Carothers Deposition at 24, 28), and no customers have ever been to the New Jersey office. (Carothers Deposition at 24–25). The New Jersey office does not receive any payments for defendant's products, (Carothers Deposition at 32) nor does defendant maintain any bank accounts within New Jersey. (Carothers Deposition at 34). Furthermore, Mr. Carothers is not authorized to consummate sales of defendant Kinetic's products (Carothers deposition at 31). All sales of defendant's products are consummated and shipped from Kentucky.

It thus appears that defendant's New Jersey office operates primarily as a "mail drop." While defendant may have future plans to expand the role of the New Jersey office, that fact is irrelevant since our inquiry is confined to the existing use of the office and whether the activities there support a finding that the defendant has a regular and established place of business in New Jersey. Since defendant's New Jersey office operates only when defendant's sales executive Carothers comes to the office, and is, therefore, closed up to 60% of the time, and since defendant spends only 15% of his time on the sale of defendant's product I cannot conclude that the defendant has a *regular* place of business in New Jersey. This finding is further reinforced by the fact that the office has no receptionist, secretary, customer records or any other significant indicia of an *established* place of business. Although my finding requires a conclusion that venue under 28 U.S.C. § 1400(a) is inappropriate in New Jersey, I will nevertheless consider the second prong of the test, i.e. whether defendant's acts of infringement took place in New Jersey.

### B) ACTS OF INFRINGEMENT IN NEW JERSEY

For purposes of this motion, plaintiff asserts that defendant has directly infringed its patent under 35 U.S.C. § 271(a). While plaintiff also asserts that defendant has induced and contributed to the infringement of its patent under 35 U.S.C. § 271(b), (c),[5] plaintiff appears not to rely on these sections as a basis for predicating venue.[6] Therefore these sections will not be considered for purposes of this motion.

35 U.S.C. § 271(a) expressly provides that "whoever ... makes, uses or sells any patented invention, within the United States during the term of the patent ... infringes the patent. In the instant case, Magicorp contends that Kinetic infringed the patent *directly by using* the patented system in New Jersey. 35 U.S.C. § 271(a). For purposes of this motion, I will assume that an infringing use has taken place. The scope of our inquiry is confined to where the *defendant's* acts of infringement took place for venue purposes.

At the outset I note that defendant does not have a service bureau or any other hardware in New Jersey. Plaintiff, however, characterizes its system as a combination patent, and argues that defendant infringes the patent in all states where the operative portions of the system are located. According to plaintiff's argument, since the patented system encompasses the defendant's customers, defendant's direct acts of infringement occur wherever its customers are located. It appears that under plaintiff's theory, the lack of specific acts within the state or the absence of the defendant's hardware in the state[7] are irrelevant to whether the defendant's direct acts of infringement occurred in the state. (Plaintiff's brief in opposition at 10). Reduced to its essentials, plaintiff argues a theory of vicarious patent infringement where the situs of defendant's *direct* infringing acts is predicated upon the location and actions of its customer(s).

I reject the notion that *direct* acts of infringement as contemplated by 35 U.S.C. § 271(a) can be predicated on the acts of

---

5. *See* plaintiff's brief in opposition at 30–31.

6. *See* plaintiff's brief in opposition at 34.

7. According to plaintiff, the lack of defendants' hardware in New Jersey does not avoid infringement since defendant's computer communicates with the customer's computer in New Jersey, thereby utilizing software resident therein. (Plaintiff's brief in opposition at 30).

another. While a defendant may be liable for its own acts of direct infringement, it cannot be held liable under a theory of direct infringement for the actions of its customers. *Fromson v. Advance Offset Plate, Inc.*, 720 F.2d 1565, 1568 (Fed.Cir. 1983). Although such a defendant may be held liable as a contributory infringer, for purposes of this motion, plaintiff has relied solely on a theory of *direct* infringement.[8] Thus plaintiff cannot rely upon the location of defendant's customers as a basis for determining where the defendant's own acts of infringement took place.

It is settled law that a combination patent can only be infringed if the infringing device contains all of the elements set forth in the patent's claim. *Sarakisian v. Winn Proof Corp.*, 697 F.2d 1313 (9th Cir.1983). Thus as plaintiff concedes, defendants sale of graphics generation software to customers in New Jersey, by itself, does not infringe the patent. (Schechter deposition at 159). Nor can defendant infringe the patent if an individual uses a modem to transmit a graphics image from his own computer to another individual's computer in a different location. Such an activity does not involve the generation of a photographic image from data received by a central computer as required by the patent. It is thus clear that there can be no infringement of the patent until the defendant performs the critical step of converting an electronic data received from a customer onto photographic media such as a 35 mm slide. Indeed this appears to be the very essence of the patent as the first sentence of the patent reads "[a]pparatus for automatically generating photographic pictures, such as 35 mm slides...." It is undisputed that this critical act occurs at the defendant's service bureaus, none of which are located in New Jersey. Since defendant did not commit the critical act or any other act, giving rise to the infringement, in New Jersey and since the defendant did not maintain any hardware within New Jersey, it is extremely doubtful that that the defendant's acts of infringement occurred in New Jersey.

This view is supported by the limited existing case law relevant to the issue at bar. In *Decca Ltd. v. United States*, 544 F.2d 1070, 210 Ct.Cl. 546 (1976) the court addressed the location of infringement issue under circumstances somewhat analogous to the present case. The infringing device was a U.S. government navigation system for positioning ships and aircraft. The navigation system consisted of "master" broadcasting stations in the United States, a "slave" broadcasting station in Norway (and several other slave stations contemplated at other foreign locations), and various ships and planes equipped with receivers. By receiving synchronized transmissions from the master and slave stations,[9] the ships and planes were capable of pinpointing the location of other ships and planes in the system.

Since the patent laws do not extend beyond the United States, *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 92 S.Ct. 1700, 32 L.Ed.2d 273 (1972), the *Decca* court was required to decide where the infringement took place. The court concluded that the infringement took place in the United States, and *not abroad* despite the fact that operative portions of the system were located in foreign territory. Not only did the court acknowledge that the system could not be confined to one country, *Decca*, 544 F.2d at 1074, but it also found the system to be "used" whenever ships or aircraft received and used the sig-

---

**8.** *See supra* note 6. It is well settled that the doctrine of actively inducing infringement, referred to in section 271 along with direct acts of infringement is not available as a separate source of liability against one who is alleged to be a direct infringer. *Picker Intern., Inc. v. Varian Assoc., Inc.*, 661 F.Supp. 347, 350 (N.D. Ohio 1987) *citing Laitram Corp. v. Rexnord, Inc.*, 226 USPQ 971 (D.Md.1985); *Jervis B. Webb v. Southern Sys., Inc.*, 495 F.Supp. 145 (E.D.Mich. 1980); *Self v. Fisher Controls Co., Inc.*, 566 F.2d 62 (9th Cir.1977). Thus, since Magicorp has alleged that Kinetic is a direct infringer, it cannot allege contributory infringement as an alternative basis for predicating venue. *Picker*, 661 F.Supp. at 350.

**9.** In order to ensure synchronization, and thus accurate navigational data, the master station controlled the slave station's transmissions. *Decca*, 544 F.2d at 1084.

nals in the manner covered by the patent. *Id.* at 1083. Nevertheless, the court reasoned that the infringing system had to be deemed a unity, at least for purposes of litigating the patent, and declared the location of the whole, for purposes of the patent laws, to be where the master station or stations were located and where they were monitored which the court found to be in Washington, D.C. 544 F.2d at 1074. The court further asserted that the scattered and changing position of the ships and planes did not have any "necessary connection with the location of the [navigation] system for purpose of the [patent laws]." *Decca*, 544 F.2d at 1074.

In the instant case, the defendant's service bureaus are analogous to the "master stations" in *Decca* whereas the individual customers who generate screen graphics are analogous to the slave stations. In *Decca*, the master stations synchronized the slave station transmissions, presumably to provide the ships and planes in the system with accurate navigation data. In the instant case, the service bureaus conduct the analogous task of synchronization by converting the electronic data received from individual customers into photographic images such as 35 mm slides. Contrary to plaintiff's suggestions, the service bureaus perform a rather critical task without which there would be no infringement. Since in *Decca* the infringing system was considered to be unity for the purpose of litigating the patent, the system in the instant case must also be considered a unity for the purpose of litigating this patent. In *Decca*, the court deemed the location of the unity and thus the location of the infringement to be where the master stations were located. In the instant case, the only logical location of the unity and thus the location of the infringement is where the defendant's service bureaus are located. Any other location, such as where the defendant's customers are located, leads to absurd results which defeat the main purpose of treating the system as a unity to begin with.

While there are conceptual differences between the *Decca* system and the current system, the differences, if anything, militate against a finding that Kinetic's acts of infringement took place in New Jersey. In *Decca*, the alleged infringer, the government, owned and operated the slave broadcasting stations in foreign territory; yet despite owning and operating a critical portion of the system, the *Decca* court concluded that the government's acts of infringement did not take place there, but rather where the "master station" was located. In the instant case, Kinetic did not operate any customer computers in New Jersey; nor did it maintain any hardware there. Thus Kinetic's alleged acts of infringement are even further removed from New Jersey than the government's alleged foreign acts of infringement were in *Decca*.[10] Based on the foregoing, I conclude that defendant Kinetic's acts of infringement did not occur in New Jersey for purpose of the patent venue statute, 28 U.S.C. § 1400(b).

## CONCLUSION

Plaintiff has failed to establish that defendant maintains a regular and established place of business in New Jersey; furthermore, plaintiff has also failed to show that defendant's acts of infringement took place in New Jersey. Since plaintiff has failed to establish both of the prerequisites for maintaining venue in this district, I recommend that this action be dismissed for improper venue.

---

10. Even if it is found that Kinetic did operate some "front end" hardware in New Jersey, under a *Decca* analysis, that fact is nevertheless irrelevant. For under *Decca*, the infringement takes place where the service bureaus are located.